State, *ex rel.*, *v.* Banks.

STATE, *ex rel., v.* BANKS.

*(Nashville.* January 19, 1901.)

1. ELECTIONS. *Of school directors under Acts* 1899, *Ch.* 218.

Acts 1899, Ch. 218, properly construed, authorizes the election of school directors, as therein provided, in all school districts wherever situated that are not coextensive with the civil districts.

Act construed: Acts 1899, Ch. 218.

2. CONSTITUTIONAL LAW. *Subject of statute is expressed in title, when.*

And, thus construed, said Act is not amenable to the constitutional objection that its body embraces more than is expressed in its title.

Constitution construed: Art. II., Sec. 17.

Act construed: Acts 1899, Ch. 218.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. H. H. COOK, Ch.

J. A. CARTWRIGHT and J. H. ACKLEN for Relator.

J. S. PILCHER for Banks.

WILKES, J. This suit involves the proper construction of Chapter 218 of the Acts of 1899.

State, *ex rel.*, *v.* Banks.

The rights of the relators to the office of School Directors of the Twenty-third Civil District of Davidson County depend upon this construction, and the constitutionality of the Act has also been brought in question, both in the Court below and in the Court of Chancery Appeals. The Act is in the words and figures following:

"AN ACT to provide for the election of School Directors in the various school districts in the State of Tennessee where the school districts are not coextensive with the civil districts.

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That it shall be the duty of the Commissioners or other officers of election in the various counties of this State, to open and hold elections in the various school districts in this State on the fourth Saturday in May, 1900, and biennially thereafter, for the purpose of electing three School Directors for each school district; *Provided,* That this Act shall not apply to any county in this State where school districts and civil districts are coextensive, or may hereafter be made so; *Provided,* That this Act shall not apply to incorporated towns which have a school system of their own; *Provided,* That this Act shall also include districts composed of portions of different counties.

"SEC. 2. *Be it further enacted,* That said election shall be held and governed by and under the laws now governing general elections, except that these elections shall be held at the school-

houses in the various school districts, or such other places as said election officers shall direct, and that the polls shall be opened at 1 P.M. and shall be closed at 5 P.M., and that the officers holding said election shall not receive any compensation therefor.

"SEC. 3. *Be it further enacted,* That this Act take effect from and after its passage, the public welfare requiring it."

The Chancellor held the Act to be constitutional, but his decree was reversed by the Court of Chancery Appeals, which pronounced the Act unconstitutional, and the relators have appealed to this Court and assigned errors.

The substance of the holding of the Court of Chancery Appeals is, that the Act is obnoxious to Section 17, Article 2, of the Constitution in that it embraces more than one subject, and that subject is not definitely expressed in the title; and also obnoxious to Section 5, Article 7, in that it provides for an election of civil officers at a different date from the first Thursday in August; that School Directors are civil officers in the sense of that section, and that their terms are fixed by that provision of the Constitution.

It appears that Cato, Burkhalter, and Cato, Jr., were elected School Directors for the Twenty-third School District of Davidson County on the fourth Saturday in May, 1900, and the effect of the holding of the Court of Chancery Appeals is that

their election was void, and their contracts and acts as directors are illegal and void, and it is assigned as error that this holding of the Court of Chancery Appeals is erroneous.

Davidson County is divided into twenty-five civil districts and twenty-nine school districts; fourteen of the school districts are co-extensive with the civil districts, and ten of the remaining civil districts embrace the remaining fifteen school districts, and the school districts are so divided that they do not correspond with the civil districts; but the twenty-third civil district is co-extensive in territorial limits with the twenty-third school district. Banks, Walton, and Andrews claim to be the legal School Directors of the district, authorized to perform the duties of the same under an election held in August of a previous year. The Court of Chancery Appeals was of opinion that the title of the Act provides for the election of School Directors in the various (meaning all) school districts in the State when the school districts are not coextensive with the civil districts, and the body of the Act provides for opening and holding elections in all the school districts in the State on the fourth Saturday in May, 1900, and biennially thereafter with a provision which excepts counties where school and civil districts are coextensive, or may thereafter be made so.

The Court of Chancery Appeals was of opinion that this provision applies to counties alone where

each civil district is a school district, and where all the school and civil districts are coextensive, and does not and cannot apply to any other. That Court says the Act, if valid, applies to all school districts, those coextensive and those not coextensive with civil districts, and hence the subject of the Act should be so construed as to apply to all school districts in the State not coextensive with the civil districts of the county, where said school districts are located, and not to apply to any school district in the State where such a school district is coextensive with the civil district of the county in which such school district is located.

The Court says this would lead to the anomalous and perplexing necessity of electing part of the school directors in May and part in August, a result which that Court says has led to great confusion, dissension, bickering, bitterness, strife, and litigation among and between school directors, teachers, pupils, and patrons of the public schools, to the great detriment of the school system and of the general public.

That Court further held that School Directors were civil officers within the meaning of Section 5, Article 7, of the Constitution, and the time for their election is, therefore, fixed by the Constitution for the first Thursday in August, and this time for election cannot be fixed for a different date by legislative enactment.

State, *ex rel.*, *v.* Banks.

We are of opinion the Court of Chancery Appeals has not properly construed the language of the Act in its application to school districts. It is true the Act is unhappily worded, and may bear the construction placed upon it by the Court of Chancery Appeals, but looking to its origin and purpose, as well as its language and the object intended to be accomplished and evils to be remedied by it, another construction can and should be adopted to carry out the purposes of the Legislature, and when this construction is placed upon the body of the Act, there is no want of harmony between the title and body of the Act, and there is no dealing with double subjects in either. The occasion for the Act, and the manner in which it was intended to apply, and the evil sought to be remedied, are plainly and tersely set out in an opinion given to the State Superintendent of Public Instruction on February 2, 1900, by the Attorney-general of the State, as follows:

"KNOXVILLE, February 2, 1900.

"*Hon. M. C. Fitzpatrick, Nashville, Tennessee:*

"DEAR SIR—Replying to your letter of recent date, requesting my opinion upon certain matters relating to the election of District School Directors. Prior to Chapter 218, Acts 1899, it seems that all elections of School Directors were had at the regular August election, and at the regular voting places in the several districts. This

system operated satisfactorily in all cases where the
school district was coextensive with the civil dis-
trict, but was obviously very unsatisfactory where
the school districts and the civil districts were
not coextensive. In the latter case it usually hap-
pened at a regular election that the voters of a
school district could not all attend and vote at
the regular voting place. The civil district being
composed of portions of two or more school dis-
tricts, the voters were scattered, and much con-
fusion prevailed as to the election of School Di-
rectors. To obviate this difficulty seems to have
been the object of the Act of 1899. That Act
leaves the former law in force, requiring the
election of School Directors at a regular voting
place, and at the regular election in August, in
all cases where the school districts and civil dis-
tricts are coextensive, and in all incorporated towns
having a school system of their own. In this
regard the law has not been changed by the Act
of 1899, but under the Act of 1899, where the
school district or school districts in any county
are not coextensive with the civil districts, or
where a school district includes parts of civil dis-
tricts situated in different counties, the election
for the District School Directors is required to
be had on the fourth Saturday in May, 1900,
and biennially thereafter. The Act fixes the place
of holding the election in such cases not at the

required polling places, but at the schoolhouses in the various districts, or at such other places as the election commissioners may select.

"I am of the opinion that the Act applies to any school district in any county which is not coextensive with the civil district, although there may be other school districts in that county which do correspond with the civil districts. School Directors elected under the Act of 1899 are required to enter upon their duties within thirty days of their election, just as those elected under former Acts are required to do.

"Yours very truly,

"G. W. PICKLE, *Attorney-general.*"

It is stated that this construction of the Act has been conceded to be correct, and followed in all the counties and school districts in the State except in Davidson County. Whether this be true or not, we are satisfied it is the correct view and construction of the Act.

The only ambiguity that arises is in the use of the word "county" in the proviso, and the position in which it is placed, but we are convinced that the true meaning of the Act is as if it read: "Provided, That this Act shall not apply in any school district in any county of the State when the school district is coextensive with the civil district," etc. In other words, the Act deals with school districts as entities, and in-

22 P—26

tended to leave school districts which were coextensive with the civil district, as to the election of directors, as they were before the passage of the Act. That is, such election must be held in August, as heretofore, but in all school districts in any county of the State which have different limits from the civil districts, the election in such districts alone should be in May. This being the correct construction of the law, it is apparent the relators have no title to the offices claimed by them, and stand in no attitude to test the constitutionality of the Act, or to maintain this action for possession of these offices. In other words, the election for Directors of the Twenty-third Civil District of Davidson County should have been held in August, and not in May, inasmuch as the Twenty-third School and Civil District are coextensive, and the Act in controversy does not apply to that district. This disposes of the case and prevents our passing upon the question whether the Act is obnoxious to Section 5 of Article 7 of the Constitution, a result which we regret, inasmuch as it is important to the public and school interests that the question be decided. But our opinion upon that feature of the case would be a dictum, no matter how thoroughly considered it might be, as there are no parties before us who can properly raise the question.

The bill must be dismissed at the costs of the relators. The Court being of opinion this controversy is not provided for by § 1427 (Shannon's compilation), providing for payment of costs out of the school funds of the district.